UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STEELWORKERS OF
AMERICA, AFL-CIO-CLC                                                                    PLAINTIFF

v.                                                                         CIVIL ACTION NO. 3:04-CV-603-S

SAINT GOBAIN CERAMICS &
PLASTICS INC., d/b/a CORHART
REFRACTORIES                                                                            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on cross motions for summary judgment by the plaintiff, United Steelworkers of America, AFL-CIO-CLC, and by the defendant, Corhart Refractories. This case arises under the Labor-Management Relations Act, as amended (29 U.S.C. §§ 141, *et. seq.*). It involves the plaintiff's claims that the defendant refused to arbitrate two grievances filed by the plaintiff based on alleged violations of the collective bargaining agreement. For the reasons set forth below, the plaintiff's motion will be **DENIED** and the defendant's motion will be **GRANTED.**

FACTS

The United Steelworkers of America, AFL-CIO-CLC ("Steelworkers") represents employees at Saint Gobain's former Louisville operation, which was known as Corhart Refractories ("Corhart"). The two parties entered into a collective bargaining agreement ("Agreement"), which was effective from February 14, 2002 through February 13, 2005. On March 2, 2004, Corhart terminated Jonathan Johnson and Sean Wohlschlegel, two members of the bargaining unit represented by the Steelworkers, citing insubordination as the grounds for termination. On the same day, the Steelworkers filed grievances numbered 9506 and 9507 contesting these two terminations.

The Agreement, which contains an arbitration clause, set forth several steps for the process of considering a grievance filed by the union.  These particular grievances, 9506 and 9507, progressed to the third step without resolution.  By letters dated March 29, 2004, Corhart formally denied both grievances in written Step 3 decisions, as proscribed by the Agreement.  The Steelworkers received these letters on April 8, 2004.

The Agreement specifically provided that the Steelworkers had 30 days in which to appeal Corhart's Step 3 answer to arbitration. *See Agreement*, Article 28, ¶ 1.  The Agreement also explicitly stated that appeals not timely filed could not be resurrected later. *See Agreement*, Article 28, ¶ 4 ("Grievances not appealed within the time limits set forth in Steps 1, 2, 3, or 4 shall be considered settled on the basis of the decision last made and shall not be eligible for further consideration or appeal.").  The Steelworkers sought to appeal the grievances and so notified Corhart in letters dated May 19, 2004, which were received by Corhart on May 24, 2004.  Corhart informed the Steelworkers that these appeals would not proceed to arbitration because they were received after the 30-day deadline had expired.

The Steelworkers' motion for summary judgment asks the court to compel arbitration to resolve these particular grievances, arguing that Corhart's refusal to arbitrate violates the Agreement.  Corhart's motion for summary judgment is based upon its assertion that these appeals were untimely and therefore not arbitrable under the terms of the Agreement.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party bears the burden of establishing these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432,

1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.* Review of cross motions for summary judgment requires the court to evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Wiley v. U.S.*, 20 F.3d 222, 224 (6th Cir. 1994).

### *A. Arbitral jurisdiction is a matter to be decided by the courts based on contract interpretation.*

This case involves interpretation of a collective bargaining agreement and the issue at bar is essentially one of contract. The famous *Steelworkers Trilogy* cases established several fundamental principles applicable in industrial relations cases such as the one at bar. *See Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The first of these principles is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal citations omitted). Thus, whether a party is under a duty to submit to arbitration depends on the language of the relevant contract. Just as in any contract case, the court must interpret that agreement and give effect to the parties' intent. The issue of a compulsory

submission to arbitration is no exception. *See id.* at 649 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47, 84 S.Ct. 909, 912-13, 11 L.Ed 898 (1964)). Thus, this court will examine the Agreement to ascertain the parties' intent with respect to arbitrability of the grievances in question.

The Supreme Court has spoken clearly on the issue of arbitrability, recognizing the "'general rule' that the issue of arbitrability is for the courts to decide unless the parties stipulate otherwise." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 647, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). However, the opinion then cited cases cautioning "courts to avoid becoming entangled in the merits of a labor dispute under the guise of deciding arbitrability." *Id.* (referencing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct 1343, 4 L.Ed.2d 1403 (1960)). Building on this caveat, the Seventh Circuit articulated a test for an exception to the general rule, which the Supreme Court adopted in *AT&T*:

> a court should compel arbitration of the arbitrability issue where [1] the collective bargaining agreement contains a standard arbitration clause, [2] the parties have not clearly excluded the arbitrabililty issue from arbitration, and [3] deciding the issue would entangle the court in interpretation of substantive provisions of the collective bargaining agreement and thereby involve consideration of the merits of the dispute.

*Id.* (citing *Communications Workers of America v. Western Electric Co.,* 751 F.2d 203 (1984)). In the instant case, the exception is inapplicable because the second prong is not met. Corhart and the Steelworkers *did* clearly exclude the arbitrability of appeals filed after the deadline. The parties explicitly "agreed that the Union shall have thirty (30) days from the time of the written Step 3 decision to notify the Company in writing that it is appealing a grievance to arbitration." *Agreement*, Article 28, ¶ 1, Step 4. Furthermore, the parties expressly stated:

> It is agreed by the parties hereto that the procedure provided in this Article, if followed in good faith by both parties, is adequate for fair and expeditious settlement of any grievance. Both parties mutually agree that grievances to be considered must be filed promptly as set forth above after the occurrence thereof. Grievances not appealed within the time limits set forth in Steps 1, 2, 3, or 4 shall be considered

- 5 -

> settled on the basis of the decision last made and shall not be eligible for further discussion or appeal.

*Agreement*, Article 28, ¶ 4. The terms of the Agreement also clearly state how the deadlines are to be calculated. "Saturdays, Sundays holidays and off days (including vacations or shutdown for repairs) are not to be counted as days for the purposes of this Article." *Agreement*, Article 28, ¶ 2. These relevant contract provisions demonstrate the parties' intent to preclude late appeals from arbitration and thus, the court should not compel arbitration.

While the Supreme Court has also specifically noted that "[w]here [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," that presumption is not absolute. *AT & T Technologies,* 475 U.S. at 650 (internal citations omitted). It may be rebutted by an agreement between the parties that contains an "express provision excluding a particular grievance from arbitration," or, in the absence of such provision, "forceful evidence of purpose to exclude [a grievance] from arbitration." *Id.* at 650. Thus, the court must examine the contract for language triggering the exception. As discussed above, the Agreement in the instant case contains just such language exhibiting the parties' clear intent to foreclose untimely appeals from arbitration.

### B. The court should not compel arbitration of an untimely appeal when the parties' agreement clearly precludes arbitration of such grievances.

The court of appeals has applied the reasoning from *AT & T* to a situation which parallels the case at bar. *See General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988). *Moog* involved the same issue regarding whether a court should compel arbitration of an untimely appeal. In *Moog,* the relevant contract contained the following provision:

> If the grievance is not then satisfactorily settled . . . it may be referred to arbitration . . . provided, however, that if the Union fails to notify the Company in writing by

> registered or certified United States mail within 15 calendar days after the Company gives its answer in writing to a grievance at Step (b) of the grievance procedure, above, then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable.

*Id.* at 872-73. This language is similar to the provisions in the Agreement between the Steelworkers and Corhart. Both set forth definite time periods in which an appeal must be filed and both explicitly precluded arbitration if those deadlines were not met. In examining the language of the agreement itself, the *Moog* court determined that the dispute was not arbitrable because the appeal was not timely filed. *See id.* at 875. The court found that there was no "reasonable doubt that the arbitration section of the agreement between these parties exclude[d] a grievance about which the union has failed to give notice, as required . . . ." *Id.* at 874. There is no meaningful distinction between the language in the instant case ("shall not be eligible for further discussion or appeal") and the language in the *Moog* case ("shall not thereafter be arbitrable"). Both contractual provisions fall outside of the presumption of arbitrability because they clearly exclude arbitration in situations where the unions do not file appeals within the proscribed time periods.

In another case concerning arbitral jurisdiction, the Sixth Circuit relied on *Moog* to determine that timeliness of a union's request for arbitration is not itself subject to arbitration. *See Raceway Park, Inc. v. Local 47, Service Employees International Union*, 167 F.3d 953 (6th Cir. 1999). While the *Raceway* opinion expressed disagreement with *Moog*, the court of appeals acknowledged that *Moog* did control the issue.[1] *Id.* at 954. The Raceway collective bargaining agreement contained similar language regarding the timeliness of appeals: "Unless the Union serves written notice via Certified Mail on the Employer within thirty (30) days after the completion of the meeting referred

---

[1] The *Raceway* court focused on the distinction between substantive and procedural arbitrability, arguing that the *Moog* court incorrectly determined timeliness to be a substantive matter within the ambit of the Supreme Court decision in *AT&T*. The *Raceway* court opined that such an issue would be more properly characterized as a procedural, reserved for the arbitrator to decide. *See Raceway Park, Inc. v. Local 47, Service Employees International Union*, 167 F.3d 953, 960-63 (6th Cir. 1999).

to . . . above, of its intent to seek binding arbitration, then in such event, all parties shall be barred from ever submitting such grievance, dispute, or disagreement to arbitration." *Id.* at 955. Thus, the *Moog* precedent dictates the same result in the present case: the grievances are not arbitrable if they were not filed within the 30-day period defined in the parties' Agreement.

However, the Steelworkers, relying heavily upon the case of *Armco Employees Independent Federation v. AK Steel Corporation*, 252 F.3d 854 (6th Cir. 2001), argue that *Moog* and its progeny do not control the instant case. *Armco* also concerned a union's attempt to compel arbitration for determination of whether the appeal was timely. In *Armco*, the court of appeals referred to *Moog* as a narrow exception to the general rule as set forth in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 8989 (1964): "[i]f a court decides that the subject matter is properly arbitrable, then potential procedural bars to arbitration are matters for the arbitration itself." *Armco,* 252 F.3d at 859 (citing *Wiley,* 376 U.S. at 556-58). The Steelworkers maintain that the timeliness of a grievance appeal is just such a procedural bar.

According to *Armco*, the *Moog* exception was created because the language in the parties' agreement "clearly prohibit[ed] submitting untimely grievances to arbitration." *Armco,* 252 F.3d at 860. The opinion then determined that Armco's agreement did not fall within the *Moog* exception because it did "not explicitly provide that an untimely grievance is substantively precluded from arbitration." *Id.* at 861. Armco's agreement used the following language: " in the event appeals are not made to the next higher Step in the grievance procedure within the time limitations specified, . . . the request, complaint or grievance shall be considered settled and no further action may be taken on it." *Id.* The opinion noted that the relevant language failed to mention "arbitrability" specifically. The court of appeals then relied upon language contained elsewhere in the agreement, providing that "questions of arbitrability are themselves to be submitted to arbitration." *Id.* This language, which the *Armco* court determined "was designed to address the precise question before [the court]," is noticeably absent in the instant case. *See id.* The Agreement between Corhart and

the Steelworkers fails to address jurisdiction regarding initial questions of arbitrability. This fact, in addition to the language regarding timeliness of appeal, leads to the conclusion that untimely grievances are substantively precluded from arbitration in the present Agreement. The parties' intent is clear from their express language:

> It is agreed by the parties hereto that the procedure provided in this Article, if followed in good faith by both parties, is adequate for fair and expeditious settlement of any grievance. Both parties mutually agree that grievances to be considered must be filed promptly as set forth above after the occurrence thereof. Grievances not appealed within the time limits set forth in Steps 1, 2, 3, or 4 shall be considered settled on the basis of the decision last made and shall not be eligible for further discussion or appeal.

*Agreement*, Article 28, ¶ 4. The language explicitly excludes any further appeal of untimely grievances. Step 4, referred to as an *appeal* of the grievance to arbitration, is undoubtedly encompassed under the phrase "shall not be eligible for further discussion or *appeal*." (emphasis added).

### C. The parties' Agreement addresses the proper calculation of the deadline for appeals.

The Steelworkers and Corhart disagree as to the proper calculation of the 30-day deadline. The Steelworkers suggest that the time period begins to run on the date they received the Step 3 decisions and ends on the day they mailed their intent to appeal. Corhart maintains that the time frame began on the date of the written Step 3 decisions and ends on the date that Corhart received notification of the Steelworkers' intent to appeal. An examination of the contract language reveals that the latter timeline is correct. Using basic rules of contract interpretation, the court should "look to explicit language of the collective bargaining agreement for clear manifestations of intent." *UAW Local 134 v. Yard-Man, Inc.,* 716 F.2d 1476, 1479-80 (6th Cir.).

Corhart and the Steelworkers "agreed that the Union shall have *thirty (30) days from the time of the written Step 3 decision to notify the Company in writing* that it is appealing a grievance to arbitration." *Agreement*, Article 28, ¶ 1, Step 4. (emphasis added). This language indicates that

the clock begins to run on the date of the written Step 3 decision.[2] The provision also states that the Steelworkers had to *notify* Corhart within the given timeline, clearly suggesting that Corhart had to be in receipt of the required writing on or before the thirtieth day. The Step 3 decisions for the relevant grievances were written on March 29 and Corhart received the Steelworkers' notice of appeal to arbitration on May 24. Excluding holidays and weekends, there were 39 business days between these two dates. Therefore, the appeals were not timely and were precluded from arbitration under the terms of the parties' Agreement.

Corhart asserted that there were two holidays falling within this relevant time period and also noted that there were no plant shutdowns during that time. The Steelworkers do not dispute those contentions. Rather, they claim that some of those days should be excluded because John Poehlein, Corhart's then Manager of Human Resources, was on vacation. Nonetheless, the Steelworkers have produced no evidence in support of their contention that he was on an extended vacation.[3] In a sworn affidavit, Mr. Poehlein stated that he was out of the office for only two days during this period.

Regardless, the case does not rest on the issue of Mr. Poehlein's vacation days. The Steelworkers argue that Mr. Poehlein's vacation days should be excluded based on the following language: "Saturdays, Sundays, Holidays and off days (including vacations or shutdowns for repairs) are not to be counted as days for the purposes of this Article." *Agreement*, Article 28, ¶ 2. "Under ordinary principles of contract law, one would construe the contract in terms of the parties' intent, as revealed by language and circumstance." *U.S. v. Winstar Corp.*, 518 U.S. 839, 911, 116 S.Ct.

---

[2] In the plaintiff's brief, the Steelworkers argue that a plain reading of this provision would allow Corhart to hold written Step 3 decisions, thus cutting the Steelworker's deadline short. The court notes that the "good faith" requirement contained in Article 28, ¶ 4 of the Agreement alleviates this concern. Furthermore, there is no allegation of bad faith in the instant case.

[3] The Steelworkers have advised the court that Mr. Poehlein discarded his day planner, which may have revealed if he were on vacation during the time in question. However, as discussed later, the court finds that the issue of Mr. Poehlein's vacation days does not affect the deadline.

2432, 2473, 135 L.Ed.2d 964 (1996). This language regarding which days to exclude is clearly intended to apply to situations in which no one was present to receive the appeals. Specifying "vacations" and "shutdowns" in addition to weekends and holidays illustrates the obvious intent to exclude only days when no one was available to receive the appeals. When ascertaining the parties' intent, the court should view the language from the standpoint of the parties when they made the agreement. To conclude that one individual's vacation days would determine the relevant time period for all grievance appeals would be an irrational interpretation.

Furthermore, the concern driving the provision in question is not relevant to the instant case because someone was consistently in the office to accept the Steelworkers' notice of appeal to arbitration. Corhart asserts that either Mr. Poehlein or Diane Ooley, Corhart's Human Resources Specialist, was present each day during the period between March 29 and May 24. The Steelworkers do not dispute this fact. Thus, someone was available to receive the appeals and the Steelworkers simply did not send them on time.

For the reasons set forth above, the court will grant the defendant's motion for summary judgment on all claims in this case.[4] A separate order will be entered herein this date in accordance with this opinion.

---

[4] The court will not consider the defendant's motion to strike the plaintiff's reply brief, as the matter becomes moot in light of the court's ruling.